1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

HEATHER FLOWERS,                                    )          3:06-CV-00592-BES-RAM

9

                    Plaintiff,                              )

10

          v.                                                   )          **ORDER**

11

DR. HAROLD COOK, STATE OF NEVADA,     )
ex rel., DEPARTMENT OF HUMAN             )

12

RESOURCES, MENTAL HEALTH AND            )
DEVELOPMENTAL SERVICE DIVISION          )

13

                    Defendants.                         )

14

_____ )

15

          Currently before this Court is a Motion for Summary Judgment (#34) filed by

16

Defendants Dr. Harold Cook, Kathleen Kirkland, Josee Perrine, and State of Nevada ex rel.,

17

Department of Health and Human Services, Division of Mental Health and Developmental

18

Services (collectively referred to herein as "Defendants") on October 24, 2007. Plaintiff

19

Heather Flowers ("Plaintiff")  filed an Opposition (#39) on January 9, 2008, and Defendants

20

filed a Reply (#40) on January 22, 2008.  The Court held a hearing on the motion on July 18,

21

2008.

22

**I. Background**

23

          This case involves a claim of illegal discrimination and violation of constitutional rights.

24

In April 1995, Plaintiff began her employment with the Department of Health and Human

25

Services as a psychiatric case worker.  To qualify for this position, Plaintiff was required to

26

possess and maintain a valid driver's license.  (Defendants' Motion for Summary Judgment

27

(#34) at Exhibit 3). In March 2000, Plaintiff was convicted of Driving Under the Influence of

28

Alcohol ("DUI") which resulted in a ninety day suspension of her driving privileges.  Because

1

1   her driving privileges were suspended, the Defendants issued Plaintiff a written remand which

2   stated that "one of the minimum qualifications" for Plaintiff's job position "is the possession of

3   a valid driver's license" and that "additional violations may lead to further disciplinary action,

4   up to and including termination of your employment." Id. at Exhibit 1-A.

5          In April 2005, Plaintiff was convicted of a second DUI, resulting in a second suspension

6   of her driver's license. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment

7   (#39) at p. 4).   Immediately following her second DUI, Plaintiff was terminated from her

8   position for failing to maintain a valid driver's license. (Defendants' Motion for Summary

9   Judgment (#34) at p. 3). Plaintiff appealed this termination to the Nevada State Personnel

10  Commission Hearing Officer ("Hearing Officer"), who found that Plaintiff's termination following

11  her second DUI was improper and ordered that she be suspended without pay for thirty days.

12  Id.  However, prior to filing her appeal to the Hearing Officer, on October 6, 2005, Plaintiff was

13  convicted of a third DUI and her license was revoked until April 13, 2009.  Thereafter, even

14  though the Hearing Officer held that Plaintiff's termination for her second DUI was improper,

15  he ordered Plaintiff's termination effective as of October 6, 2005 because of her third DUI.

16  Plaintiff sought judicial review of the Hearing Officer's decision in the state court.  The state

17  court held that the Hearing Officer's decision was rational, but held that the Hearing Officer

18  had exceeded his jurisdiction by ordering Plaintiff terminated following her third DUI because

19  the Hearing Officer's jurisdiction was limited to reviewing the disciplinary action taken following

20  Plaintiff's second DUI.  Id.

21         On May 4, 2007, Defendants sent a Specificity of Charges to Plaintiff informing her that

22  her termination due to her third DUI was effective as of October 6, 2005.  Id. at Exhibit 1-D.

23  It also notified Plaintiff that a predisciplinary hearing had been scheduled on her behalf.  Id.

24  Plaintiff is now appealing this termination claiming that she "was subjected to unjustified

25  termination by the Defendants because of her disability status, which constitutes unlawful

26  discrimination in violation of Title VII of the Civil Rights Act of 1964."[1] (Plaintiff's First Amended

27

28         [1]Plaintiff was injured in an automobile accident on December 18, 2001, and claims that she
    suffered discrimination based on an alleged disability from those injuries. (Plaintiff's Opposition to
    Defendant's Motion for Summary Judgment (#39) at p. 3).

1  Complaint (#18) at ¶ 15).  Plaintiff also filed a federal lawsuit alleging unlawful discrimination,

2  retaliation, violation of her First Amendment rights, emotional distress, breach of the covenant

3  of good faith and fair dealing and denial of due process.

4                                          **II. Analysis**

5        Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered

6  forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

7  together with the affidavits, if any, show that there is no genuine issue as to any material fact

8  and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

9  Summary judgment is "not warranted if a material issue of fact exists for trial." Ribitzki v.

10  Canmar Reading & Bates, 111 F.3d 658, 661–62 (9th Cir. 1997). A material fact is one that

11  "might affect the outcome of the suit under the governing law . . . ." Lindahl v. Air France, 930

12  F.2d 1434, 1436 (9th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49

13  (1986)). Further, any dispute regarding a material issue of fact must be genuine—the evidence

14  must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus,

15  "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

16  nonmoving party, there is no genuine issue for trial" and summary judgment is proper.

17  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

18        The burden of proving the absence of a genuine issue of material fact lies with the

19  moving party; accordingly, "[t]he evidence of the opposing party is to be believed, and all

20  reasonable inferences that may be drawn from the facts placed before the court must be

21  drawn in the light most favorable to the nonmoving party." Id. (citing Liberty Lobby, 477 U.S.

22  at 255); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). Nevertheless,

23  if the moving party presents evidence that would call for judgment as a matter of law, then the

24  opposing party must show by specific facts the existence of a genuine issue for trial. Liberty

25  Lobby, 477 U.S. at 250; FED. R. CIV. P. 56(e).  To demonstrate a genuine issue of material

26  fact, the nonmoving party "must do more than simply show there is some metaphysical doubt

27  as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586. "If the evidence [proffered

28  ///

3

by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249–50.

## A.      Failure to Provide Supporting Documents

The Court notes as a preliminary matter that Plaintiff has failed to support her allegations or factual assertions with documented evidence from the record.  In this regard, Plaintiff has attached no documentation to support her claims of discrimination and retaliation. Thus, Plaintiff provides little, if any, substance for this Court to review. See Liberty Lobby, 477 U.S. at 248 (noting that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial")(internal quotation marks omitted); see also Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001)("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found."); Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)(The court need not "scour the record in search of a genuine issue of triable fact, but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").   Here, Plaintiff has failed to properly identify with reasonable particularity the evidence that precludes summary judgment.  Moreover, as set out below, the undisputed facts establish that Defendants are entitled to summary judgment on the claims asserted against them.

## B.      Retaliation Claim

Plaintiff alleges that after she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2003, Defendants retaliated against her. Specifically, Plaintiff alleges that Defendants engaged in retaliation based upon "her complaints of discrimination and for speaking out on unlawful employment practices." (Plaintiff's Opposition to Defendants' Motion for Summary Judgment (#39) at p. 10).  Further,

///

///

4

Plaintiff claims she suffered an adverse employment action when she was terminated on October 6, 2005. In response, Defendants argue that Plaintiff failed to show a causal link between any protected activity and the Plaintiff's termination.

To establish a prima facie case of retaliation, Plaintiff must show: "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-1066 (9th 2003).  Plaintiff must offer only minimal proof in support of each prong to establish a prima facie case, and such proof "does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). If a plaintiff asserts a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. Ray, 217 F.3d at 1240. If the defendant is able to articulate such a reason, then the burden shifts back to the plaintiff to demonstrate that the defendant's reason is pretextual. Id.

To establish a causal link between a protected activity and an adverse action, a plaintiff must show 'by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [her] firing and that but for such activity [she] would not have been fired.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064–65 (9th Cir. 2002) (quoting Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir. 1986).  Plaintiff asserts that she engaged in a protected activity when she filed her charge of discrimination with the EEOC.  (First Amended Complaint (#18) at p. 4).  Plaintiff further argues that she suffered an adverse employment action when she was terminated from her employment.  Id. However, Plaintiff fails to show a causal link between the filing of the charge of discrimination and her termination.

According to the Ninth Circuit, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002); see also Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000)(noting that causation can be inferred from timing alone).  However, "timing alone will not show causation in all cases;

rather, in order to support an inference of retaliatory motive, the termination must have occurred 'fairly soon after the employee's protected expression.'" Id. (quoting Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1009-10 (7th Cir. 2000)). In Villiarimo, the Ninth Circuit held that "[a] nearly 18-month lapse between [the] protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation." Id. In this case, Plaintiff's termination occurred nearly two years after her first EEOC complaint was filed. Thus, based on the holding in Villiarimo, too much time had passed between Plaintiff's first EEOC complaint and her termination to raise an inference of discrimination. Moreover, Plaintiff has provided no other evidence of a causal link and Defendants have provided a non-discriminatory justification for Plaintiff's termination.

Defendants state that their reason for terminating Plaintiff was that she was unable to perform her job after her driver's license was revoked following her third DUI. (Defendants' Motion for Summary Judgment (#34) at p. 6). Defendants have provided evidence that maintaining a valid driver's license was a condition of her employment and was necessary in the performance of her job. In fact, such requirement was clearly listed in Plaintiff's job description. Thus, Defendants have shown that there was a legitimate, nondiscriminatory reason for their decision to terminate Plaintiff. Id. at Exhibit 3. Because Defendants have shown a nondiscriminatory reason for Plaintiff's termination, Plaintiff must show that such reason was pretextual to survive summary judgment.

Plaintiff can prove pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1148 (9th Cir. 2006). Plaintiff claims that the driver's license issue was a pretext for her termination; however, Plaintiff provides no evidence to support such a claim. As such, not only has Plaintiff failed to show a causal link between a protected activity and her termination, but Plaintiff has also failed to show that Defendants were motivated by unlawful discrimination or that their proffered explanation is unworthy of credence. Based on the foregoing, Plaintiff has provided

1  no evidence that Defendants' reason for terminating her was pretextual.  As such, Defendants

2  are entitled to summary judgment on this claim.

3  **C.     First Amendment Claim**

4          Defendants argue that they are entitled to summary judgment on Plaintiff's First

5  Amendment claim because Plaintiff's speech was not constitutionally protected.  In this regard,

6  Defendants argue that Plaintiff's speech was not a matter of public concern.  Further,

7  Defendants argue that Plaintiff has provided no evidence showing that her speech was a

8  substantially motivating factor for her termination. (Defendants' Motion For Summary

9  Judgment (#34) at p. 7).  As such, Defendants state that there is no First Amendment

10  violation.

11          In order to state a claim against a government employer for violation of the First

12  Amendment, an employee must show: "(1) The employee engaged in constitutionally

13  protected speech, (2) the employer took adverse employment action against the employee,

14  and (3) the employee's speech was a 'substantial or motivating' factor in the adverse action."

15  Freitag v. Ayers, 468 F.3d 528, 543 (9th Cir. 2006)(citing Coszalter v. City of Salem, 320 F.3d

16  968, 973 (9th Cir. 2003)).  In Garcetti v. Ceballos, the United States Supreme Court discussed

17  the elements necessary to show constitutionally protected speech by a public employee.  547

18  U.S. 410 (2006).  In Garcetti, the Supreme Court stated that "[t]he court has made clear that

19  public employees do not surrender all their First Amendment rights by reason of their

20  employment.  Rather, the First Amendment protects a public employee's right, in certain

21  circumstances, to speak as a citizen addressing matters of public concern."  Id. at 417.

22          According to the Supreme Court, "two inquiries guide interpretation of the constitutional

23  protections accorded to public employee speech."  Id. at 418.   "The first [inquiry] requires

24  determining whether the employee spoke as a citizen on a matter of public concern."  Id.  If

25  the answer to that inquiry  is no, "the employee has no First Amendment cause of action

26  based on his or her employer's reaction to the speech."  Id. (citing Connick v.Myers, 461 U.S.

27  138, 147 (1983)).  If, on the other hand, the answer is yes, "then the possibility of a First

28  Amendment claim arises."  Id.  In that case, "the question becomes whether the relevant

1   government entity had an adequate justification for treating the employee differently from any

2   other member of the general public."  Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568

3   (1968)).  "A government entity has broader discretion to restrict speech when it acts in its role

4   as employer, but the restrictions it imposes must be directed at speech that has some potential

5   to affect the entity's operations."  Id.

6        "When a citizen enters government service, the citizen by necessity must accept certain

7   limitations on his or her freedom."  Id. "Government employers, like private employers, need

8   a significant degree of control over their employees' words and actions; without it, there would

9   be little chance for the efficient provision of public services."  Id. (citing Connick, 461 U.S. at

10  143).  However, "at the same time, the Court has recognized that a citizen who works for the

11  government is nonetheless a citizen."  Id.  "The First Amendment limits the ability of a public

12  employer to leverage the employment relationship to restrict  incidentally or intentionally, the

13  liberties employees enjoy in their capacities as private citizens."  Id.  As such, the Court has

14  held that "[s]o long as employees are speaking as citizens about matters of public concern,

15  they must face only those speech restrictions that are necessary for their employers to operate

16  efficiently and effectively."  Id.       In this case, the first inquiry is whether the statements

17  made by Plaintiff were made as a citizen regarding a matter of public concern.  In this regard,

18  Plaintiff's First Amended Complaint alleges that Plaintiff exercised her First Amendment right

19  when she objected to her treatment at the hands of her supervisors, appealed a wrongful

20  termination, and filed a discrimination complaint. (First Amended Complaint (#18) at ¶ 22).

21  Further, Defendants allegedly violated her right when they created a hostile work environment

22  and later terminated Plaintiff.[2] (First Amended Complaint (#18) at ¶¶ 22-23 ).

23       Despite Plaintiff's arguments to the contrary, this Court finds that Plaintiff's speech was

24  not constitutionally protected because Plaintiff was not speaking as a citizen on a matter of

25  public concern.  Rather, Plaintiff was expressing an individual employee grievance.  As noted

26  by the United States Supreme Court in Garcetti: "[W]hile the First Amendment invests public

27  employees with certain rights, it does not empower them to 'constitutionalize the employee

28

_____

[2]  Plaintiff alleges that her speech occurred "at a 'Town Hall Meeting' put on by the employee
management group." (Defendant's Motion for Summary Judgment (#34) at Exhibit 4, p.3).

grievance." Id. In applying this premise, the Ninth Circuit has held that "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies is generally not of 'public concern.'" Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). The speech involved in this case deals with an employee grievance by the Plaintiff regarding her alleged discrimination. As such, the speech is not on a matter of public concern and is not constitutionally protected.[3] Thus, since this speech is not constitutionally protected, there can be no violation of Plaintiff's constitutional rights and the Defendants are entitled to summary judgment on this claim.

**D.    42 U.S.C. § 1983 Claim**

In addition to the foregoing, Plaintiff's First Amended Complaint includes a claim under 42 U.S.C. § 1983. (First Amended Complaint (#18) at ¶ 37). According to Plaintiff, the Defendants' conduct violates this provision because "[d]efendants willfully engaged in joint activity and invoked state action, all under color of law to cause termination, and their acts were for the purpose of terminating the Plaintiff without cause or due process." (First Amended Complaint (#18) at ¶ 36). However, because the Court finds that the Defendants did not violate Title VII or the First Amendment, this claim is without merit. Moreover, Plaintiff has failed to provide any evidence she was denied due process.

The essential requirements of due process in this context are notice and an opportunity to respond. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). "The tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. Further, under Gilbert v. Homar, "[a] public employee dismissable only for cause [is] entitled to a very limited hearing prior to [her] termination, to be followed by a more comprehensive post-termination hearing." 520 U.S. 924, 929 (1997). In the present case, after receiving notice that she was

---

[3]Under Garcetti, the fact Plaintiff did not speak as a citizen on a matter of public concern is dispositive to Plaintiff's First Amendment claim. If this initial inquiry is not met, there is no need for further analysis. It is only if the employee is speaking as a citizen on a matter of public concern that "the possibility of a First Amendment claim arises." Garcetti, 126 S.Ct. at 1958. Because this Court has determined that Plaintiff was not speaking as a citizen on a matter of public concern, the Court declines to consider the second inquiry under Garcetti which relates to whether the employer had an adequate justification to restrict the speech.

being terminated from her job, Plaintiff received a predisciplinary hearing, a hearing before the Nevada State Personnel Commission, and then sought judicial review of the Hearing Officer's decision before the state court. (Defendant's Motion for Summary Judgment (#34) at p. 10). Because Plaintiff was given notice and a full opportunity to be heard, the procedures followed by the Defendants satisfied due process.

**F.      Remaining State Law Claims**

The remaining state law claims asserted against the Defendants are dismissed pursuant to 28 U.S.C. § 1367(c).  The Court declines to exercise its supplemental jurisdiction over these claims.

III. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (#34) is GRANTED.

DATED: This 28th day of August, 2008.

UNITED STATES DISTRICT JUDGE